United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE SHOVE,<br><br>    Plaintiff,<br><br>v.<br><br>MCDONALD, et al.,<br><br>    Defendants. | Case No. 14-cv-02903-JD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 142 |

Theodore Shove is a state prisoner proceeding pro se in this civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that the three defendants in this case were deliberately indifferent to his serious medical needs by placing him in normal sizes handcuffs, instead of larger restraints, which caused cuts, scrapes and shoulder pain and led to him falling down the stairs. Defendants have filed a motion for summary judgment citing administrative exhaustion and arguing that defendants were not deliberately indifferent. Plaintiff filed an opposition. The motion is granted.

**BACKGROUND**

The following facts are undisputed.

**Medical Care**

Plaintiff was incarcerated at San Quentin State Prison ("SQSP") during the relevant time. Complaint ("Compl.") at 3. He told medical staff that in the 1970s his hand was practically cut off. Motion for Summary Judgment ("MSJ"). Gonzales Decl., Exs. 18, 21. He has attributed the injury to a band-saw accident and to an incident where it was chopped off with an axe during a burglary of his home. *Id*. He states that it was reattached in either Switzerland or California. *Id*., Ex. 24; Fisher Decl., Dep. at 53-55. He had surgery in 1988 to remove scar tissue. *Id*., Ex. 18. In

1    2000 he was in a car accident in which he injured his wrist again, causing numbness, tingling and weakness. *Id*., Ex. 24.

On April 11, 2014, plaintiff submitted a health care request stating that his wrists were being damaged from handcuffs, though he stated it was not an emergency. *Id*., Ex. 29. He spoke with a nurse on April 15 about using leg restraints instead of handcuffs, and she referred the request to a doctor. *Id*. Ex. 30. On April 17, before being seen by a doctor, plaintiff fell. Compl. at 6. In the complaint he states that while being escorted, he slipped on stairs and fell on the ground. *Id*. Plaintiff told several members of the medical staff that he fell in his cell. Gonzales Decl., Exs. 2, 31. He told a different doctor that he fell in the shower. *Id*., Ex. 4. Later on the same as the fall, plaintiff was seen by a doctor and received x-rays of his left forearm. *Id*., Exs. 2, 3. There was no fracture, but there were mild degenerative changes and post-traumatic deformity of the ulnar styloid. *Id*., Ex. 3.

Two days after the fall, plaintiff submitted a new health care request complaining of pain in his wrist, back and knees due to the fall. *Id*., Ex. 32. Defendant Dr. Grant treated plaintiff two days later and scheduled a new set of x-rays to rule out a fracture. *Id*., Ex. 4. This was the first time Dr. Grant treated plaintiff for the medical issues associated with his wrist. Grant Decl. ¶ 10. Plaintiff also asked Dr. Grant to update his accommodation chrono for restraints. Gonzales Decl., Ex. 4. Dr. Grant noted that plaintiff's last restraint chrono was from 2011 and only listed "modified cuffs." *Id*. That same day Dr. Grant provided plaintiff with an updated chrono specifying the modification as "large wrist cuffs." *Id*. The second set of x-rays, taken from three different angles, showed no fracture. *Id*., Ex. 5.

Plaintiff was seen again by Dr. Grant on May 14, after he complained of pain in his wrist, forearm and foot. *Id*., Ex. 8. Plaintiff told Dr. Grant that the large handcuffs were not working, and, due to the lack of range of his shoulder, he needed waist chains and to not be handcuffed with his arms close together. *Id*.; Grant Decl. ¶ 13. Dr. Grant told plaintiff that he would raise the issue at the next Interdisciplinary Treatment Team ("IDTT") committee meeting. Grant Decl. ¶ 13.

Plaintiff submitted another health care request complaining of damage to his left wrist from handcuffs. Gonzales Decl., Ex. 33. Two days later he was seen by a nurse who noted four to

five superficial cuts on plaintiff's wrists that were scabbed over and healing appropriately. *Id*., Ex. 34. The nurse also informed plaintiff that the restraints issue would be addressed at his upcoming IDTT meeting. *Id*.

Before plaintiff's IDTT meeting he had a Unit Classification Committee ("UCC") meeting on June 4, 2014. Cervantes Decl., Ex. 2. This was the first time defendant MacDonald was made aware of plaintiff's restraints issues. MacDonald Decl. ¶¶ 6-9. Plaintiff did not allege that staff were not following the chrono for large handcuffs; rather, he wanted the chrono to mandate the use of leg restraints on his arms because the chains are longer. Cervantes Decl., Ex. 2. He was informed they could not accommodate that request because CDCR policy prohibits the use of leg restraints on a prisoner's arms unless it is an emergency. *Id*. Plaintiff was informed he would need to raise the issue with his doctor. *Id*. Later that same day, Dr. Grant issued a chrono for plaintiff to be accommodated with waist chains with large, modified handcuffs. Gonzales Decl., Ex. 9.

Plaintiff submitted this federal civil rights complaint on June 18, 2014. Docket No 1. Plaintiff's IDTT meeting occurred on July 24, 2014, during his Institutional Classification Committee meeting. Cervantes Decl., Ex. 3. Plaintiff was informed that the waist chains with modified handcuffs had been ordered and received and would be ready to use the following day. *Id*.

Plaintiff did not raise any further issues regarding his wrists until November 23, 2015, over a year and half later. Grant Decl. ¶ 22. Plaintiff complained of decreased range of motion and some pain radiating out of his fingers, but he did not mention any problems with restraints being used at that time by correctional officers. *Id*; Gonzales Decl., Ex. 18. Dr. Grant ordered an x-ray, which showed no fracture. Grant Decl. ¶ 22.

**LEGAL STANDARD**

**Summary Judgment**

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

3

law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id*.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id*. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id*. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**Exhaustion**

"The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). To the extent that the evidence in the record permits, the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

*Id*. at 1168.  The burden is on the defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust.  *Id*. at 1172.  If the defendant meets that burden, the burden shifts to the prisoner to present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  *Id*.  The ultimate burden of proof remains with the defendant, however.  *Id*.  If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56.  *Id*. at 1166.  But if material facts are disputed, summary judgment should be denied, and the district judge, rather than a jury, should determine the facts in a preliminary proceeding.  *Id*.

The California Department of Corrections and Rehabilitation ("CDCR") provides any inmate under its jurisdiction the right to appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  To initiate an appeal, also referred to as a grievance, the inmate or parolee must submit a CDCR Form 602 describing the issue to be appealed to the appeals coordinator's office at the institution for receipt and processing.  *Id*. § 3084.2(a)-(c).  The appeal must name "all staff member(s) involved" and "describe their involvement in the issue."  *Id*. § 3084.2(a)(3).  The CDCR appeal process consists of three formal levels of appeals: (1) first formal-level appeal filed with one of the institution's appeal coordinators, (2) second formal-level appeal filed with the institution head or designee, and (3) third formal-level appeal filed with the CDCR director or designee. Id. §§ 3084.7, 3084.8.  A prisoner exhausts the appeal process when he completes the third level of review. Id. § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).  A "cancellation or rejection" of an appeal "does not exhaust administrative remedies."  Cal. Code Regs. tit. 15, § 3084.1(b).

An inmate "need not exhaust unavailable [remedies]."  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).  An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or when "an administrative

5

scheme [is] so opaque that it becomes, practically speaking, incapable of use [because while] some mechanism exists to provide relief . . . no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859–60.

**Eighth Amendment**

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but did not actually know, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In addition "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference. . . . [Prisoner] would have . . . no claim for deliberate medical indifference unless the denial was

harmful." *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

**DISCUSSION**

**Exhaustion**

Plaintiff concedes that he did not exhaust his administrative remedies. In his complaint he states, "staff requires filing of Rule 22 and completion of this informal resolution. Petitoner did file 22 no response. Hence the grievance coordinator returned grievance until response to Rule 22 of which has expiration of 15 days. Expired prior to filing." Compl. at 2. It appears that he contends staff asked him to submit an informal request before using the formal appeals process and when he did not receive a response he filed this federal lawsuit rather than proceeding with the formal appeals process.

Plaintiff presents a different argument in the opposition. He argues that in 2010, four years prior to the events in this case, defendant Arnold allegedly threatened him and forced him to withdraw a prior grievance. Docket No. 156 at 2. In plaintiff's deposition, taken prior to his opposition in which he makes the allegation against defendant Arnold, he made no mention of having been forced to withdraw a grievance due to a threat from Arnold. Fisher Decl., Deposition at 77-78. Instead, plaintiff stated that he withdrew the grievance in 2010 because defendant Arnold promised to resolve the issue and plaintiff states he did, and the issue was resolved for four years. *Id*. at 78; Compl. at 3-4.

It is undisputed that plaintiff failed to exhaust his administrative remedies. To the extent he argues that administrative remedies were effectively unavailable to him, any such argument is contradicted by the evidence. There is no evidence plaintiff was threatened in 2010, and he has filed many other inmate appeals since 2010. MSJ, Voong Decl. Ex. 2. Defendants' motion for summary judgment for failure to exhaust is granted.

**Eighth Amendment**

Even if plaintiff had exhausted his administrative remedies, summary judgment is granted on the merits. Defendants demonstrated the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. Plaintiff has failed to meet his burden in

7

demonstrating that there is a genuine issue for trial. Plaintiff offers very limited arguments concerning the events giving rise to this case. He presents many arguments concerning events in 2009 and 2010 that are not relevant to this litigation. To the extent plaintiff seeks relief concerning these incidents, the statute of limitations expired by the time plaintiff commenced this action.[1] Plaintiff also presents arguments concerning events that took place in 2016 to 2018 that are also not related to this case.

Assuming that plaintiff had a serious medical need for larger restraints and viewing the evidence in the light most favorable to plaintiff, he has failed to show that defendants were deliberately indifferent in their response to the issue. Plaintiff was promptly seen by a nondefendant nurse after he filed his first health care request regarding the damage to his wrists from standard handcuffs and he was referred to a doctor. He fell before he was able to see the doctor, but he did not suffer a serious injury. Defendant Dr. Grant saw plaintiff four days after the fall and issued a chrono for large-wrist handcuffs in response to plaintiff's request. When plaintiff later requested a different type of handcuffs, Dr. Grant stated he would raise the issue at the next IDTT meeting. At the IDTT meeting, plaintiff was informed that waist chains with large modified handcuffs had been ordered for him and had recently arrived. Plaintiff has failed to show deliberate indifferent to serious medical needs by Dr. Grant.

Similarly, plaintiff cannot show that defendant MacDonald or defendant Arnold were deliberately indifferent to his serious medical need for large restraints. MacDonald first became aware of the issue on June 4, 2014, at a UCC meeting. He informed plaintiff that he would need to raise the issue with his doctor, which plaintiff did, and the issue was resolved a month later at the IDTT meeting. Plaintiff has failed to identify how his allegations against Arnold-allegations about actions that took place in 2010-relate to plaintiff's requests for modified and larger handcuffs in 2014. Arnold did provide plaintiff a modified handcuff chrono in 2010, but it is not

---

[1] Nor has plaintiff shown that any permanent damage to his wrists was caused by the handcuffs or the fall considering the extensive injuries he suffered before arriving at the prison and the ongoing wrist pain and nerve damage he experienced prior to the events in this case. Plaintiff states his wrist was practically severed and then reattached and that he suffered injuries to his wrist in a car accident prior to his current incarceration.

8

clear how this chrono adversely affected plaintiff. While plaintiff raised new allegations against MacDonald and Arnold in his deposition, he did not discuss these allegations in his opposition or reply to the summary judgment motion even though defendants addressed the allegations in the motion.

Ultimately, plaintiff received a great deal of medical treatment for his wrists and timely responses to his requests for larger restraints during the relevant time. After his requests were addressed and the modified restraints began to be used, plaintiff did not submit any grievances regarding this issue until November 2015, at which time he only complained of pain in his wrist and did not state that there were issues with the restraints being used. For all these reasons, defendants are entitled to summary judgment.[2]

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

---

[2] For these same reasons, plaintiff has not shown that defendants were deliberately indifferent and provided an unsafe environment that led to his fall, which was an isolated incident.

9

Even if the Court were to find that defendants had deprived plaintiff of a constitutional right, they would still be entitled to qualified immunity. The record demonstrates that plaintiff's requests for larger restraints were promptly addressed by defendants. It would not be clear to a reasonable official that the treatment and accommodations provided for plaintiff would be unlawful.[3]

**CONCLUSION**

1. Defendants' motion for summary judgment (Docket No. 142) is **GRANTED**.

2. The Clerk shall terminate all pending motions, enter judgment, and close the file.

**IT IS SO ORDERED.**

Dated: November 14, 2018

JAMES DONATO
United States District Judge

---

[3] Because the Court has found that defendants are entitled to summary judgment on the merits, the other arguments will not be addressed. Nor will the Court address plaintiff's new allegation of discovery violations. Plaintiff has repeatedly filed frivolous motions concerning discovery that have already been addressed by the Court, and defendants have provided more than 3,000 pages of documents to plaintiff.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| THEODORE SHOVE, | |
|---|---|
| Plaintiff, | Case No. 14-cv-02903-JD |
| v. | **CERTIFICATE OF SERVICE** |
| MCDONALD, et al., | |
| Defendants. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 14, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Theodore Shove ID: G11092
San Quentin State Prison
San Quentin, CA 94974

Dated: November 14, 2018

Susan Y. Soong
Clerk, United States District Court

By: /s/ Lisa R. Clark
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO

11